IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ELIZABETH K. GRIMES,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | No. CIV 09-510-TUC-CKJ<br><br>**ORDER** |

On August 2, 2010, Magistrate Judge Jacqueline J. Marshall issued a Report and Recommendation (Doc. 22) in which she recommended that Plaintiff's Motion for Summary Judgment (Doc. 16) be denied and the final decision of the Commissioner be affirmed. On August 16, 2010, Plaintiff Elizabeth K. Grimes ("Grimes") filed Objections to the Report and Recommendation; the Commissioner has filed a response.

*Magistrate Judge's Recitation of the Procedural History and the Record on Appeal*

While Grimes disputes the significance and weighing of findings, Grimes does not dispute the magistrate judge's recitation of the procedural history and the record on appeal. The Court accepts the procedural history and summary of the record on appeal as stated by the magistrate judge.

*Standard of Review*

The findings of the Commissioner are meant to be conclusive, 42 U.S.C. §§ 405(g),

1383(c)(3), and a decision to overturn a denial of benefits is appropriate only if the denial "is not supported by substantial evidence or [if the denial] is based on legal error." *Matney v. Sullivan*, 981 F2d 1016, 1019 (9th Cir. 1992), *citations omitted*; *Lockwood v. Comm'r*, — F.3d —, 2010 WL 3211697 (9th Cir. 2010); *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). The standard is less than a "preponderance of the evidence" standard. *Matney*, 981 F.2d at 1019. Further, a denial of benefits is to be set aside if the Commissioner has failed to apply the proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002). Indeed, this Court must consider both evidence that supports, and evidence that detracts from, the conclusion of the Administrative Law Judge ("ALJ"). *Frost*, 314 F.3d at 366-67; *see also Bray v. Commissioner of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r*, 554 F.3d 1219, 1225 (9th Cir. 2009).

*Opinion of Dr. D'Souza*

Grimes asserts that the ALJ, and the magistrate judge, failed to provide deference to the opinion of Netley D'Souza, M.D., which is to be given great weight. Grimes asserts that, when a treating physician's opinion is not entitled to controlling weight, the opinion is still entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.[1] The regulations set forth the factors considered in determining the

---

[1] If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

- 2 -

weight to be given a medical opinion:

> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
>
>> (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.
>>
>> (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. §§ 404.1527(d) and 416.927(d); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).[2]

Grimes asserts that, because she has a longitudinal relationship with Dr. D'Souza, his opinion is accorded additional weight. Although the ALJ and the magistrate judge concluded that Dr. D'Souza's opinion lacked supportability, Grimes asserts that these conclusions ignore the consistent records between the treating physician and the specialist to which he referred Grimes. Grimes asserts that when the records of Dr. D'Souza, a family practitioner who has treated all of Grimes's impairments, are considered in the context of the treating pain specialist's records, the additional clinical information shows that Grimes receives partial transitory relief from her pain treatments. Grimes also asserts that, even if Dr. D'Souza's opinion lacks supportability, the opinion still meets the other factors outlined in the above regulation for receiving enhanced weight. Grimes argues that this opinion is uncontroverted because the non-examining, non-treating doctors do not have independent findings upon which to controvert the treating doctor's opinion. *Lingenfelter v. Astrue*, 504

---

[2]The Court notes that, unlike in *Lockwood*, 2010 WL 3211698 * 4, where the Ninth Circuit stated that "[t]he regulation at issue here requires only that the ALJ consider whether use the older age category; it does not impose any obligation to make express findings incorporated in the ALJ's opinion," the regulations applicable in this case states that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d).

- 4 -

1  F.3d 1028, 1038 n. 10 (9th Cir. 2007).

2  However, in making these arguments, Grimes fails to acknowledge that the ALJ
3  considered the factors set forth in the regulations. The ALJ recognized Dr. D'Souza was a
4  treating physician and that his opinion, "on the issue of the nature and severity of an
5  impairment, is entitled to special significance; and, when supported by objective medical
6  evidence and consistent with otherwise substantial evidence of record, entitled to controlling
7  weight[.]" Administrative Record ("AR"), p. 20. However, the ALJ also stated that "the
8  opinions of Dr. D'Souza, who assessed the claimant with residual functional capacity of less
9  than sedentary work is not afforded any significant weight as this opinion conflicts with the
10 substantial evidence of record, documenting less severe limitations (Social Security Ruling
11 ("SSR") 96-6p). The doctor did not adequately consider the entire record, including the
12 statements of collateral sources and the objective findings of other treating physicians. The
13 objective evidence in the record does not support the level of severity that this doctor
14 assigns." AR, pp. 20-21. Moreover, as summarized by the magistrate judge, the ALJ
15 recognized the inconsistencies between Grimes' complaints and the medical records and the
16 inconsistency between Dr. D'Souza's opinion and the medical records:

> The ALJ noted that "[p]hysical examinations were generally unremarkable with few minimal abnormal findings." [AR 19]. The ALJ supported this statement by citing the records of Dr. D'Souza which "reported from April 21, 2006 through May 19, 2008 that the claimant had continuing complaints of low back pain, however, practically all examinations of the back (approximately 15) were unremarkable with findings of no external bruising, no erythema, no tenderness to palpation, and usually normal range of motion and negative straight leg raise testing." [AR 19]. A review of the record establishes this finding is legitimate. Although Dr. D'Souza characterized Plaintiff's maladies as completely disabling when completing disability forms, his records suggest otherwise. As the Commissioner points out, in February 2007, Dr. D'Souza found the Plaintiff had no acute joint inflammation, erythema, or warmth and had only "mild subjective" right hip discomfort. [AR 232-34]. In April 2007, she was again reported to have no acute inflammation, erythema, or warmth in her joints. She had normal range of motion in her back with no tenderness to palpation and could lie down and rise from that position. [AR 346-48]. In June, she had only "mild discomfort" on palpation of the muscles around the neck and again was reported with no acute inflammation, erythema, or warmth in her joints and only "mild" subjective discomfort in her right hip, and "some" discomfort to muscle palpation. [AR 343-45]. Additionally, although not specifically cited by the ALJ, Plaintiff's 2006 MRI showed only minimal multilevel disc degeneration with no herniated disks or stenosis. [AR 274].

> The ALJ also addressed Plaintiff's knee complaints, noting that when Plaintiff complained of knee pain, Dr. D'Souza found she had "very minimal" knee swelling and tenderness. [AR 404-05]. A subsequent x-ray of the knee was "negative and normal." [AR 402]. In fact, virtually every objective diagnostic procedure failed to support the existence or extent of the condition for which it was ordered. Her brain MRI did not support a finding of Bell's palsy. [AR 272]. An MRI of her hips was normal with "no DJD, malalignment, fracture, bone bruise, bone marrow edema, joint effusion, or bursal enlargement." [AR 273]. An MRI of her lumbar spine showed only "mild, multilevel anterolateral disc bulge throughout the lumbar spine but no significant posterior or neural foraminal disc bulge," no significant muscle atrophy, no compression deformity, no significant disc height loss, no central canal stenosis or neural foraminal stenosis and no significant facet degeneration, and the impression was "[m]inimal multilevel disc degeneration. No HNP, central canal stenosis, or neural foraminal stenosis." [AR 274]. An x-ray of the lumbar spine showed "[n]o significant radiographic abnormality of the lumbar spine." [AR 275]. Her EKG "showed an incomplete right bundle branch but otherwise negative." [AR 247].

Report and Recommendation, pp. 14-16. Indeed, the ALJ also discussed (in considering the credibility of Grimes) Grimes's subjective complaints:

> . . . [T]he claimaint has reported that her treatment has been generally helpful. The claimant reported to TVFM on December 13, 2006 that injections to the back temporarily helped her back condition (Exhibit 1F/8). On May 1, 2007, Dr. Prust reported that the claimant stated that her back pain was in the same location, but she was 75 % better overall (Exhibit 12F/2). On November 14, 2007, the claimant reported to TVFM that her left knee pain had improved and that her symptoms were manageable . . .

AR, p. 19. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (evidence that claimant responded well to treatment considered in rejecting claimant's testimony); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983); *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982).

Moreover, Dr. D'Souza's opinion was contradicted by those of John Fahlberg, M.D., and Anita Stafford, M.D. The ALJ was permitted to find that the opinions of the non-examining doctors constituted substantial evidence because they were consistent with and supported by other independent evidence in the record. *Lester*, 81 F.3d at 830-31. Additionally, the ALJ considered Grimes's daily activities, AR, pp. 16-17, 18, and activities during the period of adjudication, AR, p. 19-20. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (claimant's daily activities may be a reason for rejecting treating physician's opinion that claimant was totally disabled).

Considering the record and the inconsistencies, Dr. D'Souza's disability opinion is

1  not "well-supported by medically acceptable clinical and laboratory diagnostic techniques"
2  and is inconsistent with other substantial evidence in the record.  SSR 96-2p at *1, 61
3  Fed.Reg. 34,490, 34, 491, 1996 WL 374188 (July 2, 1996).  The Court finds that the ALJ
4  provided specific and legitimate reasons that are supported by substantial evidence to not
5  accept Dr. D'Souza's disability opinion.  Further, considering the factors set forth in the
6  regulations,  the ALJ's decision not to afford any enhanced weight to those opinions was
7  supported by the objective evidence.  The decision must be upheld because the evidence is
8  readily susceptible to the interpretation of the ALJ.  *Morgan v. Comm'r*, 169 F.3d 595, 599
9  (9th Cir. 1999).

*Credibility of Grimes*

Grimes also asserts that the magistrate judge applied the improper legal standard by establishing the Residual Functional Capacity (RFC) and then evaluating Grimes's testimony against the RFC.  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  The ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR, p. 18; *see also Bunnell*, 947 F.2d at 345, 346 ("once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;]" "the claimant establishes a medical impairment reasonably likely to be the cause of the pain, the Secretary directs the ALJ to consider 'all of the available evidence' because the Secretary recognizes that 'pain is subjective and not susceptible to measurement by reliable techniques'").  However, when reviewing the decision of the ALJ in its entirety, it is clear the ALJ applied the correct standard in weighing Grimes's credibility.  The ALJ set forth the standard for considering a claimant's symptoms:

> In considering the claimant's symptoms, the undersigned must follow a two-step

- 7 -

> process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment (s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

AR, pp. 17-18; *see also Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cri. 1996); SSR 96-7p; 20 C.F.R. 404.1529(c). The ALJ stated:

> In evaluating the claimant's subjective complaints of pain and alleged mental impairments under the factors at 20 CFR 404.1529 and Social Security Ruling 96-7p, the undersigned notes that the record shows that the claimant's treatment has been conservative in nature and not the type one would expect from a disabling condition; the claimant testified that the medications do not cause adverse side effects that would preclude sustained work activity, the mental examinations' findings have been overwhelmingly unremarkable, the claimant has not had any psychiatric hospitalizations, and the record does not contain any objective abnormal findings to support the claimant's level of back pain. Moreover, she describes an active life that includes handling her personal needs, maintaining her household while living alone, attending multiple medical appointments, and doing recent volunteer work. The evidence is inconsistent with limitations that would preclude sustained work activity, and is consistent with an ability to do less than a wide range of light work capacity.

AR, p. 19. Moreover, as previously stated, the ALJ considered that Grimes has reported that her treatment has been generally helpful. *Id.* The ALJ also considered that "[p]hysical examinations were generally unremarkable with few minimal abnormal findings" and that, "[d]uring the period of adjudication, the claimant's mental status examinations (MSE) and finding were unremarkable and did not support a finding of a disabling mental condition." AR, pp. 18-19. The ALJ summarized:

> In sum, the lack of objective medical evidence, the conservative nature of the treatment provided and multiple examinations performed, which revealed generally normal findings with subjective complaints of pain, showed little evidence of impairment, much less a disabling impairment. Although the claimant complained of continued low back and symptoms related to fibromyalgia and arthritis, most clinical findings were normal or minimal. Also, having reviewed the record in its entirety, and despite a finding by a state consultant of non-severe mental impairments, the undersigned concludes that the claimant has underlying medically determinable mental impairments that could reasonably be expected to result in some of the

- 8 -

1  symptoms as alleged. The undersigned however does not find the claimant's assertions concerning her impairments and their impact on her condition can be considered fully credible in light of the claimant's admitted activities of daily living, the overwhelmingly unremarkable mental status examinations, and findings made on examinations that the claimant had normal memory and concentration. In conclusion, the lack of objective medical evidence and the claimant's subjective complaints are fully consistent with the above residual functional capacity.

AR, p. 21.

The Court finds the ALJ's findings are both supported by substantial evidence in the record as a whole and free of legal error. *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985) (The limited role of the court is to ensure that the "Secretary's findings are [not] based upon legal error [and are] supported by substantial evidence in the record as a whole."); *see also Lockwood*, 2010 WL 3211697 * 2.

Accordingly, after an independent review, IT IS ORDERED:

1. The Report and Recommendation (Doc. 22) is ADOPTED;

2. Plaintiff's Motion for Summary Judgment (Doc. 16) is DENIED;

3. The decision of the ALJ is AFFIRMED;

4. Judgment is awarded in favor of Defendant and against Plaintiff, and;

5. The Clerk of the Court shall enter judgment in this case and shall then close its file in this matter.

DATED this 21st day of September, 2010.

_____
Cindy K. Jorgenson
United States District Judge

- 9 -